Hannah Stone, Esq.
Alyssa L. Campbell, Esq.
MILODRAGOVICH, DALE &
  STEINBRENNER, P.C.
620 High Park Way ▪ P.O. Box 4947
Missoula, MT 59806-4947
hstone@bigskylawyers.com;
acampbell@bigskylawyers.com

*Attorneys for Defendants-Intervenors
  Sportsmen's Alliance Foundation,
  Safari Club International, and Rocky
  Mountain Elk Foundation*

Michael T. Jean
SPORTSMEN'S ALLIANCE FOUNDATION
801 Kingsmill Parkway
Columbus, OH 43299
mjean@sportsmensalliance.org

*Attorney for Defendant-Intervenor-
  Sportsmen's Alliance Foundation*

Regina Lennox
SAFARI CLUB INTERNATIONAL
501 2nd Street NE
Washington, DC 20002
rlennox@safariclub.org

*Attorney for Defendant-Intervenor Safari
  Club International*

James H. Lister
BIRCH HORTON BITTNER & CHEROT
1100 Connecticut Ave NW, Ste. 825
Washington, DC 20036
jlister@dc.bhb.com

*Attorney for Defendant-Intervenor Rocky
  Mountain Elk Foundation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al<br><br>Plaintiffs,<br><br>and<br><br>WESTERN WATERSHEDS PROJECT, et al,<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>Defendants,<br><br>and<br><br>SPORTSMEN'S ALLIANCE FOUNDATION, SAFARI CLUB INTERNATIONAL, and ROCKY MOUNTAIN ELK FOUNDATION,<br><br>Defendants-Intervenors. | **Lead Case**<br>**9:24-cv-00086-DWM**<br><br>Member Case<br>9:24-cv-00087-DWM<br><br><br>**PROPOSED DEFENDANTS-INTERVENORS' PROPOSED ANSWER TO PLAINTIFFS W. WATERSHEDS PROJECT, ET AL'S COMPLAINT IN MEMBER CASE** |

COMES NOW, Proposed Intervenor-Defendants Sportsmen's Alliance Foundation ("Sportsmen's Alliance"), Safari Club International ("Safari Club"), and Rocky Mountain Elk Foundation ("RMEF") (collectively, "Hunting Intervenors"), and respectfully answer and assert defenses to the allegations and claims contained in the Complaint filed by Plaintiffs Western Watersheds Project, the International Wildlife Coexistence Network, WildEarth Guardians, NIMIIPUU Protecting the Environment, Alliance for the Wild Rockies, Friends of the Clearwater, Wilderness Watch, Predator Defense, Trap Free Montana, and Protect the Wolves (collectively, "Plaintiffs") (Doc. 1) and answer each numbered paragraph as follows.

## INTRODUCTION

1.      Hunting Intervenors deny the allegations in paragraph 1, and specifically deny that Plaintiffs are entitled to any relief under the Endangered Species Act ("ESA") or Administrative Procedure Act ("APA"). Hunting Intervenors admit that Plaintiffs have filed this lawsuit and alleged claims under those statutes.

2.      Hunting Intervenors deny that Plaintiffs are entitled to any relief in this lawsuit. Hunting Intervenors admit that Plaintiffs challenge the "finding" referenced in paragraph 2.

3.      Hunting Intervenors deny that Plaintiffs are entitled to any relief in this lawsuit. Hunting Intervenors admit that Plaintiffs challenge the "finding" referenced in paragraph 3.

4.      Hunting Intervenors admit that the U.S. Fish and Wildlife Service ("Service") prepared a "Species Status Assessment for the Gray Wolf (*Canis lupus*)

in the Western United States" ("SSA"), which is available at Regulations.gov, Docket FWS-HQ-ES-2021-0106. Hunting Intervenors further admit that Plaintiffs filed a petition seeking to list gray wolves under the ESA, which is available in the same Docket, but deny that Plaintiffs are "conservation organizations." Hunting Intervenors deny the allegations in paragraph 4 to the extent they characterize and draw legal conclusions regarding the SSA or the petition.

5.     The allegations in the first two sentences of paragraph 5 characterize the finding that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The final sentence is a conclusion of law to which no response is required. Hunting Intervenors deny the allegations in paragraph 5 to the extent they characterize the finding and draw legal conclusions.

6.     Hunting Intervenors deny the allegations in the first sentence of paragraph 6. The allegations in the second sentence of paragraph 6 characterize the court's ruling in the cited case, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 6 to the extent they characterize the case and draw legal conclusions from it. The cited case is one of three consolidated by the court in the Northern District of California. Hunting Intervenors intervened in this case to defend the Service's decision and are currently appealing the district court's decision cited by Plaintiffs.

7.     Hunting Intervenors deny the allegations in the first sentence of paragraph 7, specifically that Plaintiffs are conservation organizations and that they were "compelled to bring this civil action." The allegations in the second sentence of

paragraph 7 are conclusions of law to which no response is required; however, Hunting Intervenors deny that the Service's findings "is arbitrary, capricious, an abuse of discretion, and not in accordance with the ESA."

## JURISDICTION

8.     The allegations in paragraph 8 are conclusions of law to which no response is required; however, Hunting Intervenors specifically deny that this Court has jurisdiction over Plaintiffs' claims.

9.     The allegations in paragraph 9 are conclusions of law to which no response is required; however, Hunting Intervenors specifically deny that this Court has jurisdiction over Plaintiffs' claims.

10.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 10 and deny them for that reason.

11.     The allegations in paragraph 11 are conclusions of law to which no response is required; however, Hunting Intervenors specifically deny that Plaintiffs are entitled to any relief on their claims.

12.     The allegations in paragraph 12 are conclusions of law to which no response is required. To the extent a response is required, the allegations in paragraph 12 are denied.

13.     Hunting Intervenors deny the allegations in paragraph 13.

//

//

**PROPOSED DEFENDANTS-INTERVENORS'** *PROPOSED* **ANSWER TO**
**PLAINTIFFS W. WATERSHEDS PROJECT, ET AL'S COMPLAINT IN MEMBER CASE     PAGE 4**
12231.004

## PARTIES

14.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 14 and deny them for that reason.

15.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 15 and deny them for that reason.

16.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 16 and deny them for that reason.

17.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 17 and deny them for that reason.

18.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 18 and deny them for that reason.

19.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 19 and deny them for that reason.

20.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 20 and deny them for that reason.

21.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 21 and deny them for that reason.

22.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 22 and deny them for that reason.

23.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 23 and deny them for that reason.

24.     Hunting Intervenors deny the allegations in paragraph 24.

25.     Hunting Intervenors deny the allegations in paragraph 25.

26.     Hunting Intervenors deny the allegations in paragraph 26.

27.     Hunting Intervenors deny the allegations in paragraph 27.

28.     Hunting Intervenors deny the allegations in paragraph 28.

29.     Hunting Intervenors deny the allegations in paragraph 29.

30.     Hunting Intervenors deny the allegations in paragraph 30.

31.     Hunting Intervenors deny the allegations in paragraph 31.

32.     Hunting Intervenors admit the allegations in paragraph 32.

33.     Hunting Intervenors admit the allegations in paragraph 33.

34.     Hunting Intervenors admit the allegations in paragraph 34.

35.     Hunting Intervenors admit the allegations in paragraph 35.

## BACKGROUND

**The Gray Wolf (*Canis lupus*)**

36.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 36 and deny them for that reason.

37.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 37 and deny them for that reason.

38.     Hunting Intervenors admit the allegations in paragraph 38.

39.     Hunting Intervenors admit the allegations in paragraph 39.

40.     Hunting Intervenors admit the allegations in paragraph 40.

41.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 41 and deny them for that reason.

42.     Hunting Intervenors deny the allegations in paragraph 42 regarding wolf populations being "partly influenced" and "Density-dependent, intrinsic mechanisms" as those terms are vague and ambiguous.

43.     Hunting Intervenors admit the allegations in paragraph 43.

44.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 44 and deny them for that reason.

**The Gray Wolf's Decline in the Contiguous United States**

45.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 45 and deny them for that reason.

46.     Hunting Intervenors deny the allegations in paragraph 46, except admit that in 1974, populations of gray wolves inhabited the State of Minnesota and Isle Royale, Michigan, among other places, including large populations of gray wolves in the State of Alaska and throughout Canada.

47.     Hunting Intervenors deny the allegations in paragraph 47, except admit that abundant populations of gray wolves inhabit a number of U.S. States, including but not limited to the States referenced in paragraph 47 (*e.g.*, California, Colorado, Idaho, Michigan, Minnesota, Montana, Oregon, Washington, Wisconsin, and Wyoming), among other States and Canadian provinces, and a number of gray wolves were released in Colorado in December 2023 and January 2024 pursuant to a voter-approved statute.

48.     The allegations in paragraph 48 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in the Western United States is likely considerably higher than estimated by the SSA and presented here.

49.     The allegations in paragraph 49 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best

evidence of its content. The quoted data represent minimum numbers, and the wolf population in Montana is likely higher than estimated by the SSA and presented here.

50.     The allegations in paragraph 50 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in Idaho is likely higher than estimated by the SSA and presented here.

51.     The allegations in paragraph 51 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in Wyoming is likely higher than estimated by the SSA and presented here.

52.     The allegations in paragraph 52 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in Oregon is likely higher than estimated by the SSA and presented here.

53.     The allegations in paragraph 53 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in Washington is likely higher than estimated by the SSA and presented here.

54.     The allegations in paragraph 54 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best

evidence of its content. The quoted data represent minimum numbers, and the wolf population in California is likely considerably higher than estimated by the SSA and presented here.

55.    The allegations in paragraph 55 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. The quoted data represent minimum numbers, and the wolf population in Colorado is likely considerably higher than estimated by the SSA and presented here. As further evidence of this statement, a gray wolf that had traveled from the Great Lakes region was recently found on Colorado's eastern plains. *E.g.*, Outdoor Life, https://www.outdoorlife.com/conservation/great-lakes-wolf-in-colorado/.

56.    Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 56 and deny them for that reason.

57.    The allegations in paragraph 57 paraphrase the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 57 to the extent they characterize and draw legal conclusions regarding the SSA.

58.    The allegations in paragraph 58 quote (without attribution) and characterize the SSA that Plaintiffs challenge, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 58 to the extent they characterize and draw legal conclusions regarding the SSA.

**The Gray Wolf's Listing History Under the ESA**

59.     Hunting Intervenors deny the allegations in paragraph 59, except admit that gray wolves (*Canus lupus*) were listed as such under the ESA in 1978. Seventy-eight species were listed under the Endangered Species Preservation Act of 1966, including the "timber wolf," *Canus lupus lycaon*. That species was carried forward through the Endangered Species Conservation Act of 1969 and the ESA in 1973, along with *Canus lupus irremotus*.

60.     The allegations in paragraph 60 characterize the 1978 listing of the gray wolf under the ESA, published at 43 Fed. Reg. 9607 (Mar. 9, 1978), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 60 to the extent they characterize and draw legal conclusions regarding the 1978 listing. Safari Club commented on the proposal addressed in that rule. 43 Fed. Reg. at 9610. Hunting Intervenors admit that, despite Safari Club's comments, in 1978 the Service reclassified the former *C. lupus* subspecies as *C. lupus*, with a threatened population in Minnesota and an endangered population in the lower 48 U.S. States.

61.     The allegations in paragraph 61 characterize the 1978 listing of the gray wolf under the ESA, published at 43 Fed. Reg. 9607 (Mar. 9, 1978), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 61 to the extent they characterize and draw legal conclusions regarding the listing. Hunting Intervenors specifically deny that this document states that "human-caused mortality was identified as a primary threat" to gray wolves, as the

document only acknowledges that "[d]irect killing by man … *has* been the major direct factor in the decline of wolves …" 43 Fed. Reg. at 9611 (emphasis added).

62.     Hunting Intervenors admit that some estimates found approximately 1,235 wolves in Minnesota at the time of the 1978 listing. See 85 Fed. Reg. at 69788.

63.     The allegations in paragraph 63 characterize the Service's proposed rules and final rules to downlist or delist the gray wolf species, or distinct population segments of that species, from the ESA lists. Those proposed rules and final rules speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 63 to the extent they characterize and draw legal conclusions regarding those rules. Hunting Intervenors otherwise deny the allegations in paragraph 63.

64.     The allegations in paragraph 64 characterize a 2003 rule published at 68 Fed. Reg. 15804 (Apr. 1, 2003), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 64 to the extent they characterize and draw legal conclusions regarding the 2003 rule. Hunting Intervenors specifically deny the allegation in paragraph 64 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time.

65.     The allegations in paragraph 65 characterize this 2003 rule and two cases, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 65 to the extent they characterize and draw legal conclusions regarding the 2003 rule and the court cases.

66.    The allegations in paragraph 66 characterize two cases, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 66 to the extent they characterize and draw legal conclusions regarding those 2003 court cases.

67.    The allegations in paragraph 67 characterize a case, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 67 to the extent they characterize and draw legal conclusions regarding that court case.

68.    The allegations in paragraph 68 characterize a 2007 rule published at 72 Fed. Reg. 6052 (Feb. 8, 2007), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 68 to the extent they characterize and draw legal conclusions regarding the 2007 rule. Hunting Intervenors specifically deny the allegation in paragraph 68 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time.

69.    The allegations in paragraph 69 characterize this 2007 rule and a case, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 69 to the extent they characterize and draw legal conclusions regarding the 2007 rule and the court case.

70.    The allegations in paragraph 70 characterize a 2008 rule published at 73 Fed. Reg. 75356 (Feb. 27, 2008), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 70 to the extent

they characterize and draw legal conclusions regarding the 2008 rule. Hunting Intervenors specifically deny the allegation in paragraph 70 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time.

71.    The allegations in paragraph 71 characterize at least one case, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 71 to the extent they characterize and draw legal conclusions regarding the case.

72.    The allegations in paragraph 72 characterize certain 2009 rules published by the Service, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 72 to the extent they characterize and draw legal conclusions regarding the 2009 rule. Hunting Intervenors specifically deny the allegations in paragraph 72 that the Service "attempted" to do anything, as the Service published final rules which took certain actions that were effective at the time.

73.    The allegations in paragraph 73 characterize two cases, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 73 to the extent they characterize and draw legal conclusions regarding the two cases.

74.    The allegations in paragraph 74 characterize Pub. L. 112-10, which speaks for itself and is the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 74 to the extent they characterize and draw legal

conclusions regarding Pub. L. 112-10. Hunting Intervenors specifically deny the allegation in paragraph 74 that, through this law, Congress "forced" the Service to do anything.

75.     The allegations in paragraph 75 characterize a 2011 rule published at 76 Fed. Reg. 81666 (Dec. 28, 2011), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 75 to the extent they characterize and draw legal conclusions regarding the 2011 rule. Hunting Intervenors specifically deny the allegation in paragraph 75 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time.

76.     The allegations in paragraph 76 characterize two cases, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 76 to the extent they characterize and draw legal conclusions regarding those two cases.

77.     The allegations in paragraph 77 characterize a case, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 77 to the extent they characterize and draw legal conclusions regarding that case.

78.     The allegations in paragraph 78 characterize a 2012 rule published at 77 Fed. Reg. 55530 (Sept. 10, 2012), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 74 to the extent they characterize and draw legal conclusions regarding the 2012 rule. Hunting

Intervenors specifically deny the allegation in paragraph 78 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time.

79.    The allegations in paragraph 79 characterize two cases and a rule published by the Service, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 79 to the extent they characterize and draw legal conclusions regarding those cases or the rule.

80.    The allegations in paragraph 80 characterize the 2020 rule published at 85 Fed. Reg. 69778 (Nov. 30, 2020), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 80 to the extent they characterize and draw legal conclusions regarding the rule. Hunting Intervenors specifically deny the allegation in paragraph 80 that the Service "attempted" to do anything, as the Service published a final rule which took certain actions that were effective at the time. Hunting Intervenors also specifically deny the allegation in paragraph 80 that the Service "lump[ed] together" gray wolf populations.

81.    The allegations in paragraph 81 characterize a case, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 81 to the extent they characterize and draw legal conclusions regarding that case.

82.    Hunting Intervenors admit the allegations in paragraph 82, except specifically deny that the Northern Rocky Mountains ("NRM") DPS of gray wolves was "Congressionally-created and Congressionally-delisted." The NRM was defined

by the Service, and wolf populations across the entire NRM DPS were not delisted by Congress.

83.    The allegations in paragraph 83 characterize the 2009 rule, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 83 to the extent they characterize and draw legal conclusions regarding the 2009 rule.

**State Management of Gray Wolves**

84.    Hunting Intervenors admit the allegations in paragraph 84.

85.    The allegations in paragraph 85 characterize certain legal authorities for wolf management in Colorado, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 85 to the extent they characterize and draw legal conclusions regarding those legal authorities.

86.    The allegations in paragraph 86 characterize certain legal authorities for wolf management in California, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 86 to the extent they characterize and draw legal conclusions regarding those legal authorities.

87.    Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 87 and deny them for that reason.

//

//

88.     Hunting Intervenors admit the allegations in paragraph 88, except specifically deny that the NRM DPS of gray wolves was "Congressionally-created and Congressionally-delisted."

89.     Hunting Intervenors admit the allegations in paragraph 89, except specifically deny that the NRM DPS of gray wolves was "Congressionally-created and Congressionally-delisted."

90.     Hunting Intervenors admit the allegations in the first two sentences of paragraph 90, except specifically deny that the NRM DPS of gray wolves was "Congressionally-created and Congressionally-delisted." The remaining allegations in paragraph 90 characterize certain legal authorities for wolf management in Utah, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 90 to the extent they characterize and draw legal conclusions regarding those legal authorities.

91.     Hunting Intervenors admit the allegations in the first sentence of paragraph 91. Hunting Intervenors deny the allegations in the second sentence of paragraph 91, except admit that gray wolves in the eastern approximately one-third of Oregon are delisted. The allegations in third and fourth sentences in paragraph 91 in part characterize certain legal authorities for wolf management in Oregon, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 91 to the extent they characterize and draw legal conclusions regarding those legal authorities. Hunting Intervenors lack sufficient

knowledge or information to form a belief as to the veracity of the allegations in the last sentence of paragraph 91 and deny them for that reason.

92.     Hunting Intervenors admit the allegations in the first sentence of paragraph 92. Hunting Intervenors deny the allegations in the second sentence of paragraph 92, except admit that gray wolves in the eastern approximately one-third of Washington are delisted. The allegations in third and fourth sentences of paragraph 92 characterize certain legal authorities for wolf management in Washington, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 92 to the extent they characterize and draw legal conclusions regarding those legal authorities.

93.     Hunting Intervenors deny the allegations in paragraph 93.

94.     Hunting Intervenors deny the allegations in the first sentence of paragraph 94, except admit that these States use adaptive management to responsibly manage gray wolf populations within their borders in line with management plans and state laws. Hunting Intervenors admit the allegations in the second sentence of paragraph 94.

95.     The allegations in paragraph 95 characterize certain legal authorities for wolf management in Wyoming, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 95 to the extent they characterize and draw legal conclusions regarding those legal authorities.

96.     The allegations in paragraph 96 characterize certain legal authorities for wolf management in Wyoming, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 96 to the extent they characterize and draw legal conclusions regarding those legal authorities.

97.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 97 and deny them for that reason.

98.     Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 98 and deny them for that reason. To the extent the allegations in paragraph 98 characterize a document prepared by the Service in which it "acknowledges," that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 98 to the extent they characterize and draw legal conclusions regarding that document.

99.     The allegations in paragraph 99 characterize certain legal authorities for wolf management in Idaho and Montana, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 99 to the extent they characterize and draw legal conclusions regarding those legal authorities. Hunting Intervenors deny the allegations in paragraph 99 regarding an "outside organization," which are vague and ambiguous.

100.   The allegations in paragraph 100 quote (without attribution) or characterize a document prepared by the Service, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 100 to the extent they characterize and draw legal conclusions regarding that document.

101.   The allegations in paragraph 101 characterize certain legal authorities for wolf management in Montana, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 101 to the extent they characterize and draw legal conclusions regarding those legal authorities.

102.   The allegations in paragraph 102 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. To the extent the allegations in paragraph 102 characterize a document prepared by the Service in which it "relied on the 2023 draft plan," that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 102 to the extent they characterize and draw legal conclusions regarding those legal authorities and documents.

103.   The allegations in paragraph 103 characterize Montana's "2023 draft plan," which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 103 to the extent they characterize and draw legal conclusions regarding that draft plan.

104.   The allegations in paragraph 104 characterize Montana's "2023 draft plan," which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 104 to the extent they characterize and draw legal conclusions regarding that draft plan.

105.   Hunting Intervenors admit the allegations in the first sentence of paragraph 105. Hunting Intervenors deny the remaining allegations in paragraph 105, and specifically deny the allegations in the third sentence of paragraph 105 regarding an "outside organization," which are vague and ambiguous. Hunting Intervenors admit that Montana, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management.

106.   The allegations in paragraph 106 characterize certain legal authorities for wolf management in Montana, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 106 to the extent they characterize and draw legal conclusions regarding those legal authorities.

107.   The allegations in paragraph 107 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 107 to the extent they characterize and draw legal conclusions regarding those legal authorities.

108.   The allegations in paragraph 108 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 108 to the extent they characterize and

draw legal conclusions regarding those legal authorities. Hunting Intervenors deny the allegations in paragraph 108 regarding an "outside organization," which are vague and ambiguous.

109.   Hunting Intervenors deny the allegations in paragraph 109.

110.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 110 and deny them for that reason; however, Hunting Intervenors admit that the wolf population in Montana remained essentially stable or potentially increasing in the period between 2012 and 2020.

111.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 111 and deny them for that reason; however, Hunting Intervenors admit that the wolf population in Montana remained essentially stable or potentially increasing in the period between 2012 and 2020.

112.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 112 and deny them for that reason. To the extent that the allegations in paragraph 112 are based on a document prepared by Montana Fish, Wildlife, and Parks, that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 112 to the extent they characterize and draw legal conclusions regarding that document.

113.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 113 and deny them for that reason. To the extent that the allegations in paragraph 113 are based on a document prepared by Montana Fish, Wildlife, and Parks, that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 112 to the extent they characterize and draw legal conclusions regarding that document.

114.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 114 and deny them for that reason. To the extent that the allegations in paragraph 114 are based on a document prepared by Montana Fish, Wildlife, and Parks, that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 114 to the extent they characterize and draw legal conclusions regarding that document.

115.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 115 and deny them for that reason. To the extent the allegations in the third and fourth sentences of paragraph 115 characterize a statement by the Service and Cassidy et al. (2023), those documents speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 115 to the extent they characterize and draw legal conclusions regarding Cassidy et al. (2023). Hunting Intervenors specifically deny that Cassidy et al. (2023) represents the best available science.

116.    Hunting Intervenors admit the allegations in the first sentence of paragraph 116.  Hunting Intervenors deny the remaining allegations in paragraph 116. To the extent the allegations in the final sentence of paragraph 116 refer to a statement by the Service, that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 116 to the extent they characterize and draw legal conclusions regarding that document.

117.    The allegations in paragraph 117 characterize Crabtree et al. (2023), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 117 to the extent they characterize and draw legal conclusions regarding Crabtree et al. (2023). Hunting Intervenors specifically deny the allegations in paragraph 117 that iPOM estimates are biased or inaccurate. As stated in Montana's 2023 wolf management plan, "iPOM is a modern, scientifically peer-reviewed, and cost-effective means of monitoring wolves, and is the most efficient method to document wolf population numbers and trends accurately across the distribution of wolves in Montana (Sells et al. 2020, Sells et al. 2021, Sells et al. 2022a, Sells et al. 2022b)…." Hunting Intervenors specifically deny that Crabtree et al. (2023) represents the best available science.

118.    The allegations in paragraph 118 characterize Creel (2021), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 118 to the extent they characterize and draw legal conclusions regarding Creel et al. (2021). Hunting Intervenors specifically deny the allegations in paragraph 118 that iPOM estimates are biased or inaccurate. As stated

in Montana's 2023 wolf management plan, "iPOM is a modern, scientifically peer-reviewed, and cost-effective means of monitoring wolves, and is the most efficient method to document wolf population numbers and trends accurately across the distribution of wolves in Montana (Sells et al. 2020, Sells et al. 2021, Sells et al. 2022a, Sells et al. 2022b)...." Hunting Intervenors specifically deny that Creel (2021) represents the best available science.

119.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 119 and deny them for that reason. To the extent that the allegations in paragraph 119 are based on a document prepared by Montana Fish, Wildlife, and Parks, that document speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 119 to the extent they characterize and draw legal conclusions regarding that document. The 2023 wolf management plan for Montana states that, "Since 2011, population numbers have remained considerably above the federal recovery minimum threshold of 15 breeding pairs and 150 wolves in Montana. From 2011–2022, the population appears to have become somewhat stabilized with an average of 194 packs and 1,165 wolves per year (Figures 1-4; 191 packs and 1,138 wolves per year, 2016–2022).

120.   Hunting Intervenors admit the allegations in paragraph 120.

121.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 121 and deny them for that reason.

122.   The allegations in paragraph 122 characterize the "2023 state management plan for wolves" in Idaho, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 122 to the extent they characterize and draw legal conclusions regarding that management plan.

123.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 123 regarding the State of Idaho's intent and deny them for that reason. Hunting Intervenors admit that Idaho, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management.

124.   Hunting Intervenors admit that regulated hunting and trapping are used as the primary wolf management tools in Idaho.

125.   The allegations in paragraph 125 characterize Idaho's wolf hunting regulations, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 125 to the extent they characterize and draw legal conclusions regarding those regulations. Hunting Intervenors admit that Idaho, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management.

126.   The allegations in paragraph 126 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 126 to the extent they characterize and draw legal conclusions regarding those legal authorities.

127.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 127 and deny them for that reason. Hunting Intervenors deny the allegations in paragraph 127 regarding an "outside organization," which are vague and ambiguous.

128.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 128 and deny them for that reason; however, Hunting Intervenors admit that the wolf population in Idaho remained essentially stable or potentially increasing in the period between 2012 and 2019.

129.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 129 and deny them for that reason; however, Hunting Intervenors admit that Idaho, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management. Idaho's wolf population remains abundant and well above delisting minimums.

130.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 130 and deny them for that reason; however, Hunting Intervenors admit that Idaho, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management. Idaho's wolf population remains abundant and well above delisting minimums.

131.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 131 and deny them for that reason; however, Hunting Intervenors admit that Idaho, like other NRM states, has an abundant wolf population and uses regulated hunting and trapping for population management. Idaho's wolf population remains abundant and well above delisting minimums.

132.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 132 and deny them for that reason; however, Hunting Intervenors admit that the wolf population in Idaho remained abundant and well above delisting minimums in the period between 2012 and 2022.

133.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in the first two sentences of paragraph 133 and deny them for that reason. These allegations, as well as the remaining allegations in paragraph 133, characterize a statement by the Service and an article dated January 27, 2023, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 133 to the extent they characterize and draw legal conclusions regarding the Service's statement and the January 27, 2023 article. The wolf population in Idaho remained abundant and well above delisting minimums in the period between 2020 and 2022.

//

//

134.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 134 and deny them for that reason.

135.   Hunting Intervenors deny the allegations in paragraph 135.

136.   The allegations in paragraph 136 characterize Creel (2021), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 136 to the extent they characterize and draw legal conclusions regarding Creel et al. (2021). Hunting Intervenors specifically deny the allegations in paragraph 136 that Idaho's "STE" estimates of wolf population are biased or inaccurate. Hunting Intervenors specifically deny that Creel (2021) represents the best available science.

137.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 137 and deny them for that reason. Research demonstrates that high levels of reproduction and immigration in wolf populations compensate for mortality rates as high as 48% without causing population decline. *E.g.*, Creel & Rotella (2010); Gude et al. (2012); SSA p. 36.

138.   The allegations in paragraph 138 characterize statements by the Service, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 138 to the extent they characterize and draw legal conclusions regarding the Service's statements. Hunting Intervenors otherwise deny the allegations in paragraph 138. Hunting Intervenors specifically deny that Creel (2021) represents the best available science.

139.   Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the allegations in paragraph 139 and deny them for that reason.

140.   Hunting Intervenors deny the allegations in paragraph 140.

141.   The allegations in paragraph 141 characterize certain documents, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 141 to the extent they characterize and draw legal conclusions regarding those documents. Hunting Intervenors specifically deny the allegations in paragraph 141 that Montana's iPOM estimates or Idaho's STE estimates of wolf population are biased or inaccurate. Hunting Intervenors specifically deny that Creel (2022) and Treves (2022), cited by Plaintiffs, represent the best available science.

142.   Hunting Intervenors deny the allegations in paragraph 142.

143.   The allegations in paragraph 143 characterize Crabtree et al. (2023), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 143 to the extent they characterize and draw legal conclusions regarding Crabtree et al. (2023). Hunting Intervenors specifically deny the allegations in paragraph 143 that Montana's iPOM estimates of wolf population are biased or inaccurate or require a "corrective factor." Hunting Intervenors specifically deny that Crabtree et al. (2023) represents the best available science.

//

//

144.    The allegations in paragraph 144 characterize a press release, which speaks for itself and is the best evidence of its content. Hunting Intervenors otherwise deny the allegations in paragraph 144.

**Petitions to Relist Gray Wolves in the NRM, or Alternatively, List the Gray Wolf in a Western U.S. DPS.**

145.    Hunting Intervenors admit the Plaintiffs petitioned the Service to list wolves in the Western U.S. States and to relist the NRM DPS. Hunting Intervenors specifically deny that there are "alarming new pressures on wolves from state management in Montana, Idaho, and Wyoming." Hunting Intervenors also specifically deny that the NRM DPS was "Congressionally-created and Congressionally-delisted."

146.    The allegations in paragraph 146 characterize Plaintiffs' listing petition, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 146 to the extent they characterize and draw legal conclusions regarding the listing petition. Hunting Intervenors specifically deny that Plaintiffs' listing petition has merit or is based on the best available scientific information.

147.    The allegations in paragraph 147 characterize the finding published at 86 Fed. Reg. 51857 (Sept. 17, 2021), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 147 to the extent they characterize and draw legal conclusions regarding the finding.

148.   The allegations in paragraph 148 characterize the finding published at 86 Fed. Reg. 51857 (Sept. 17, 2021), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 148 to the extent they characterize and draw legal conclusions regarding the finding.

149.   The allegations in paragraph 149 characterize the finding published at 86 Fed. Reg. 51857 (Sept. 17, 2021), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 149 to the extent they characterize and draw legal conclusions regarding the finding. Under the ESA, the Service looks only to the petition to determine "whether the petition presents substantial scientific information indicating that the [petitioned action] mat be warranted." 16 U.S.C. § 1533(b)(3)(A).

150.   Hunting Intervenors deny the allegations in paragraph 150.

151.   The allegations in the first sentence of paragraph 151 characterize the ESA, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 151 to the extent they characterize and draw legal conclusions regarding the ESA. Hunting Intervenors lack sufficient knowledge or information to form a belief as to the veracity of the remaining allegations in paragraph 151 and deny them for that reason.

**The Service's Not-Warranted Finding**

152.   The allegations in paragraph 152 characterize the finding published at 89 Fed. Reg. 8391 (Feb. 7, 2024) ("2024 finding"), which speaks for itself and is the

best evidence of its content. Hunting Intervenors deny the allegations in paragraph 152 to the extent they characterize and draw legal conclusions regarding the finding.

153.   The allegations in paragraph 153 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 153 to the extent they characterize and draw legal conclusions regarding the finding.

154.   Hunting Intervenors admit the allegations in the first sentence of paragraph 154. The allegations in the remainder of paragraph 154 characterize the Service's "DPS Policy," which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 154 to the extent they characterize and draw legal conclusions regarding the DPS Policy.

155.   The allegations in paragraph 155 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 155 to the extent they characterize and draw legal conclusions regarding the finding.

156.   The allegations in paragraph 156 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 156 to the extent they characterize and draw legal conclusions regarding the finding.

157.   The allegations in paragraph 157 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the

allegations in paragraph 157 to the extent they characterize and draw legal conclusions regarding the finding.

158.   The allegations in paragraph 158 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 158 to the extent they characterize and draw legal conclusions regarding the finding.

159.   Hunting Intervenors deny the allegations in paragraph 159.

160.   Hunting Intervenors admit the allegations in the first half of paragraph 160. The allegations in the second half of paragraph 160 characterize the SSA, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 160 to the extent they characterize and draw legal conclusions regarding SSA.

161.   The allegations in paragraph 161 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 161 to the extent they characterize and draw legal conclusions regarding the finding.

162.   The allegations in paragraph 162 characterize the 2024 finding and the "original" listing of gray wolves, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 162 to the extent they characterize and draw legal conclusions regarding the finding or the listing.

163.   The allegations in paragraph 163 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 163 to the extent they characterize and draw legal conclusions regarding the finding.

164.   The allegations in paragraph 164 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 164 to the extent they characterize and draw legal conclusions regarding the finding.

165.   The allegations in paragraph 165 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 165 to the extent they characterize and draw legal conclusions regarding the finding.

166.   The allegations in paragraph 166 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 166 to the extent they characterize and draw legal conclusions regarding the finding. Hunting Intervenors otherwise deny the allegations in paragraph 166.

167.   The allegations in paragraph 167 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 167 to the extent they characterize and draw legal conclusions regarding the finding. Hunting Intervenors specifically deny the allegations in paragraph 167 because the SSA states in full: "Dependent on the

analysis, researchers estimate that human-caused mortality rates between 17 to 48 percent result in wolf population stability (citations omitted). A general rule of thumb is that wolves are able to compensate for annual rates of human-caused mortality up to approximately 29 percent of the known or estimated population (citations omitted)."

168.    The allegations in paragraph 168 presumably characterize the 2024 finding and Cassidy et al. (2023), which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 168 to the extent they characterize and draw legal conclusions regarding the finding or Cassidy et al. (2023). Hunting Intervenors deny that regulated hunting disrupts wolves' social structures for any significant period, as wolf packs are able to replace individual wolves with regularity. Hunting Intervenors specifically deny that Cassidy et al. (2023) represents the best available science.

169.    The allegations in paragraph 169 presumably characterize the 2024 finding and other Service documents, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 169 to the extent they characterize and draw legal conclusions regarding the finding.

170.    The allegations in paragraph 170 presumably characterize the 2024 finding and the SSA, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 170 to the extent they characterize and draw legal conclusions regarding the finding or the SSA. In this section of the SSA, the Service analyzes the resiliency and redundancy of the gray

wolf population in the NRM under certain scenarios combining disease impacts and current levels of regulated offtakes. The point of this analysis is to demonstrate that gray wolf populations will remain in the NRM, even under "worst case" scenarios. Hunting Intervenors specifically deny that the SSA's analysis represents a "population model," as it more accurately represents a population viability predictor in "worst case" and other conditions. The Service's ultimate conclusion in the SSA is a "zero probability" of NRM wolves dropping below the extinction threshold within the projected time periods -- *i.e.*, a viable population over the 10- and 100-year scenarios.

171.    The allegations in paragraph 171 presumably characterize the 2024 finding and the SSA, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 171 to the extent they characterize and draw legal conclusions regarding the finding and SSA. Hunting Intervenors specifically deny that the SSA's analysis represents a "population model," as it more accurately represents a population viability predictor in "worst case" and other conditions. The SSA's analysis, with all worst-case contingencies, estimates at least 753 wolves at the bottom of the Lower Credible Interval. The same worst case contingency analysis estimates 1,084 wolves at the Upper Credible Interval, as well as 2,657 wolves in the Upper Credible Interval in a different disease scenario. The Service's ultimate conclusion in the SSA is a "zero probability" of NRM wolves dropping below the extinction threshold within the projected time periods -- *i.e.*, a viable population over the 10- and 100-year scenarios.

172.   Hunting Intervenors deny the allegations in paragraph 172. Hunting Intervenors specifically deny that the SSA's analysis represents a "population model," as it more accurately represents a population viability predictor in "worst case" and other conditions.

173.   Hunting Intervenors deny the allegations in paragraph 173. Hunting Intervenors specifically deny that the SSA's analysis represents a "population model," as it more accurately represents a population viability predictor in "worst case" and other conditions.

174.   Hunting Intervenors deny the allegations in paragraph 174. Hunting Intervenors specifically deny that the SSA's analysis represents a "population model," as it more accurately represents a population viability predictor in "worst case" and other conditions.

175.   The allegations in paragraph 175 presumably characterize the SSA, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 175 to the extent they characterize and draw legal conclusions regarding the SSA.

176.   The allegations in paragraph 176 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 176 to the extent they characterize and draw legal conclusions regarding the finding.

177.   The allegations in paragraph 177 characterize certain documents, which speak for themselves and are the best evidence of their content. Hunting Intervenors

deny the allegations in paragraph 177 to the extent they characterize and draw legal conclusions regarding those documents.

178.   The allegations in paragraph 178 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 178 to the extent they characterize and draw legal conclusions regarding the finding. Hunting Intervenors specifically deny that inbreeding or lack of genetic diversity represents a threat to interconnected gray wolf populations in the NRM.

179.   The allegations in paragraph 179 presumably characterize the 2024 finding and vonHoldt (2023), which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 179 to the extent they characterize and draw legal conclusions regarding the finding or vonHoldt (2023). Hunting Intervenors specifically deny that vonHoldt (2023) represents the best available science.

180.   The allegations in paragraph 180 characterize vonHoldt (2023), which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 180 to the extent they characterize and draw legal conclusions regarding vonHoldt (2023). Hunting Intervenors specifically deny that vonHoldt (2023) represents the best available science.

181.   The allegations in paragraph 181 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting

Intervenors deny the allegations in paragraph 181 to the extent they characterize and draw legal conclusions regarding the finding.

182.    Hunting Intervenors deny the allegations in paragraph 182.

183.    The allegations in paragraph 183 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 183 to the extent they characterize and draw legal conclusions regarding the finding. Hunting Intervenors specifically deny that a minimum viable population analysis represents the best available science.

184.    The allegations in paragraph 184 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors otherwise admit the allegations in paragraph 184.

185.    The allegations in paragraph 185 presumably characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 185 to the extent they characterize and draw legal conclusions regarding the finding. Hunting Intervenors specifically deny that human-caused mortality, disease and predation, and genetic diversity and inbreeding are "threats" to gray wolf populations, but otherwise admit the allegations in paragraph 185.

186.    The allegations in paragraph 186 characterize the 2024 finding and Idaho and Montana regulations, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 186

**PROPOSED DEFENDANTS-INTERVENORS' *PROPOSED* ANSWER TO**
**PLAINTIFFS W. WATERSHEDS PROJECT, ET AL'S COMPLAINT IN MEMBER CASE    PAGE 41**
12231.004

to the extent they characterize and draw legal conclusions regarding those documents.

187. The allegations in paragraph 187 presumably characterize the 2024 finding and other documents from Idaho and Montana, which speak for themselves and are the best evidence of their content. Hunting Intervenors otherwise deny the allegations in paragraph 187.

188. The allegations in paragraph 188 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 188 to the extent they characterize and draw legal conclusions regarding the finding.

189. Hunting Intervenors deny the allegations in paragraph 189.

190. The allegations in paragraph 190 presumably characterize the 2024 finding and the SSA, which speak for themselves and are the best evidence of their content. Hunting Intervenors otherwise admit the allegations in paragraph 190.

191. The allegations in paragraph 191 characterize the 2024 finding, which speaks for itself and is the best evidence of its content. Hunting Intervenors admit the allegations in paragraph 191.

## FIRST CLAIM FOR RELIEF
### (Violation of the ESA – Five Threat Factors)

192. Hunting Intervenors incorporate their answers to all of the proceeding paragraphs.

193.   The allegations in paragraph 193 characterize the ESA, which speaks for itself and is the best evidence of its content. Hunting Intervenors deny the allegations in paragraph 193 to the extent they characterize and draw legal conclusions regarding the ESA.

194.   Hunting Intervenors deny the allegations in paragraph 194.

195.   Hunting Intervenors deny the allegations in paragraph 195.

## SECOND CLAIM FOR RELIEF
### (Violation of the ESA – Best Available Science)

196.   Hunting Intervenors incorporate their answers to all of the proceeding paragraphs.

197.   The allegations in paragraph 197 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. Hunting Intervenors deny the allegations in paragraph 197 to the extent they characterize and draw legal conclusions regarding those authorities.

198.   Hunting Intervenors deny the allegations in paragraph 198.

199.   Hunting Intervenors deny the allegations in paragraph 199.

## THIRD CLAIM FOR RELIEF
### (Violation of the ESA – Significant Portion of Its Range)

200.   Hunting Intervenors incorporate their answers to all of the proceeding paragraphs.

201.   The allegations in paragraph 201 characterize certain legal authorities, which speak for themselves and are the best evidence of their content. Hunting

Intervenors deny the allegations in paragraph 201 to the extent they characterize and draw legal conclusions regarding those authorities.

202.　Hunting Intervenors deny the allegations in paragraph 202.

203.　Hunting Intervenors deny the allegations in paragraph 203.

204.　Hunting Intervenors deny the allegations in paragraph 204.

## REQUEST FOR RELIEF

Hunting Intervenors specifically deny that Plaintiffs are entitled to the relief requested or to any relief whatsoever.

## GENERAL DENIAL

Hunting Intervenors deny any allegations contained in the Complaint, whether express or implied, that are not specifically admitted, denied or qualified in this Answer. To the extent that Hunting Intervenors have failed to respond to any allegation in the Complaint, Hunting Intervernos deny those allegations.

## AFFIRMATIVE DEFENSES

1.　Plaintiffs fail to state a claim for which relief may be granted.

2.　Plaintiffs lack standing to assert one or more of their claims.

3.　This Court lacks jurisdiction over one or more of Plaintiffs' claims.

4.　Plaintiffs have failed to provide proper notice for any claims under the ESA requiring such notice.

5.　One or more of Plaintiffs' claims are not ripe for review.

6.　Plaintiffs' claims are precluded by *Defenders of Wildlife v. Zinke*, 849 F.3d 1077 (D.C. Cir. 2017).

7.    The issues that Plaintiffs raise are precluded by *Defenders of Wildlife v. Zinke*, 849 F.3d 1077.

Hunting Intervenors reserve the right to assert additional affirmative defenses as they become evident.

DATED this ____ day of July, 2024.

*Proposed*
_____
*Attorneys for Defendants-Intervenors Sportsmen's Alliance Foundation, Safari Club International, and Rocky Mountain Elk Foundation*
