**Alexander R. Scolavino III** (Mont. Bar No. 68806621)
Agency Legal Counsel
**Jeffrey M. Hindoien** (Mont. Bar No. 4101)
Chief Legal Counsel
Montana Fish, Wildlife and Parks
P.O. Box 200701
Helena, Montana 59620-0701
(406) 594-8050; (406) 594-9023
Alexander.Scolavino@mt.gov; jeff.hindoien@mt.gov
*Attorneys for State of Montana and*
*Montana Fish, Wildlife and Parks*
*Proposed Intervenors*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Lead Case CV 24-86-M-DWM |
| Plaintiffs, | |
| and | Member Case CV-24-87-M-DWM CV-24-97-M-DWM |
| WESTERN WATERSHEDS PROJECT, et al., | |
| Consolidated Plaintiffs, | **BRIEF IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT BY STATE OF MONTANA AND MONTANA FISH, WILDLIFE AND PARKS** |
| ANIMAL WELLNESS ACTION, et al., | |
| Consolidated Plaintiffs, | |
| vs. | |
| UNITED STATES FISH AND WILDLIFE SERVICE, et al., | |

Defendants,

SPORTSMEN'S ALLIANCE
FOUNDATIONS, SAFARI CLUB
INTERNATIONAL, and ROCKY
MOUNTAIN ELK FOUNDATION,

Defendant-Intervenors.

STATE OF MONTANA and
MONTANA DEPARTMENT OF
FISH, WILDLIFE AND PARKS,

Defendant Intervenor Applicants.

The State of Montana and Montana Fish, Wildlife and Parks, (together, "Montana"), respectfully submit the following Brief in Support of its Motion to Intervene, pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b).

## INTRODUCTION

On June 18, 2024, Western Watersheds Project, The International Wildlife Coexistence Network, Wildearth Guardians, Nimiipuu Protecting the Environment, Alliance for the Wild Rockies, Friends of the Clearwater, Wilderness Watch, Predator Defense, Trap Free Montana, and Protect the Wolves (hereby "Plaintiffs") filed a complaint challenging the United States Secretary of the Interior ("Secretary"), the United States Fish and Wildlife Service ("USFWS"), and the Director of the USFWS ("Director") (collectively, the "Service") finding in denying Endangered Species Act ("ESA") protections

for the gray wolf in the Northern Rocky Mountains and Western United States. See 89 Fed. Reg. 8,391 (Feb. 7, 2024). Specifically, the Plaintiffs challenge the Service's finding that the Western United States gray wolf distinct population segment ("DPS") does not warrant listing as an endangered or threatened species under the ESA and, as a result, seeks judicial review of the Service's decision. Multiple organizations filed complaints seeking to challenge the Service's decision, which this Court consolidated by its order dated July 16, 2024. Doc. 26.

Montana seeks defendant intervention as a matter of right under Fed. R. Civ. P. 24(a). Alternatively, Montana moves to be permitted to intervene as a defendant pursuant to Fed. R. Civ. P. 24(b). As noted in Montana's unopposed motion to intervene, counsel for Montana discussed Montana's proposed intervention with counsel for all parties. Plaintiffs Center for Biological Diversity, *et al.*, do not oppose intervention, granted Montana briefing be subject to the word limitations in Local Rule 7.1(d)(2). Consolidated Plaintiffs Western Watersheds Project, *et al.*, do not take a position on Montana's motion to intervene. Consolidated Plaintiffs Animal Wellness Action, *et al.*, take no position on Montana's motion to intervene. The Defendants take no position on Montana's motion to intervene. Lastly, the Defendant-Intervenors do not oppose Montana's motion to intervene. Accordingly, this motion is unopposed.

## **BACKGROUND**

Wolf recovery in Montana began in the early 1980's. Wolves increased in number and distribution because of natural emigration from Canada and successful federal and tribal efforts that reintroduced wolves into Yellowstone National Park, the wilderness areas of central Idaho, and northern Montana. Over time, the wolf population grew and eventually met the Service's federal recovery goals – 30 breeding pairs for 3 consecutive years – in 2002. At that time, an estimated 663 wolves and 43 breeding pairs were in the Northern Rocky Mountains ("NRM").

Given that wolves met the Service's federal recovery goals, Montana began taking measures to ensure adequate regulatory mechanisms in the hopes that wolves would soon be delisted. One such action was the development of Montana's Gray Wolf Conservation and Management Plan (2002), which received the Service's approval in 2004. While delisting was not immediate, gray wolves in the NRM were eventually delisted via congressional action. In particular, the United States Congress directed the Secretary to reissue the final delisting rule for the NRM, and on May 5, 2011, the Service published its final rule designating wolves throughout the NRM, except Wyoming, as a delisted species. Once delisted, Montana classified wolves as a Species in Need of Management. Montana's laws, administrative rules, and wolf plan replaced the

federal framework, and, to date, Montana has successfully managed the gray wolf.

When wolves were first delisted, Montana's efforts in determining the overall population of wolves relied solely on field staff and technicians monitoring wolf packs and obtaining a minimum count. As the population increased and exceeded 500 wolves across more than 25,000 square miles, the ability to count every pack, every wolf, and every breeding pair became unrealistic and expensive. *See* Exhibit A - Decl. of Quentin Kujala. To address this issue, Montana began considering alternative approaches to monitoring the wolf population. One alternative approach to monitoring the wolf population started with a collaborative effort with the University of Montana Cooperative Wildlife Research Unit in 2006. *Id.* This method was called "Patch Occupancy Modelling" or "POM" from 2007 to 2019. *Id.* Unfortunately, POM was sensitive to the sizes of packs and territories and was developed before implementing of a public harvest. Implementation of POM relied on accurate data of territory size, overlap, and pack size, and with field monitoring becoming less effective, cumbersome, and expensive, Montana shifted its focus to developing a new and updated alternative. *Id.*

In 2020, the "Integrated Patch Occupancy Model" or "iPOM" was developed. iPOM eliminated the need for intensive field-based monitoring and

introduced new modeling methods, such as an occupancy model, territory

model, and a group model. *Id.* The occupancy model estimates annual wolf

distribution based on environmental factors, wolf observations reported by

hunters, and verified packs. *Id.* The territory model predicts territory sizes based

on behavioral rules, terrain, human density, and data pertaining to prey species.

*Id.* Together, these two models predict the number of packs in a given area. *Id.*

The group model estimates pack size based on harvest intensity, control

removals, the terrain, and long-term density for given areas. *Id.* The total

abundance is derived by combining the estimated number of packs and pack

sizes while also accounting for lone and dispersing wolves and the minimum

counts that Montana still conducts to this day. *Id.* In sum, iPOM is a modern,

scientifically valid, and financially efficient means of monitoring wolves. *Id.*

## **ARGUMENT**

## I. **MONTANA MEETS THE STANDARD FOR INTERVENTION AS A MATTER OF RIGHT.**

Fed. R. Civ. P. 24(a) governs intervention as a matter of right and

provides in relevant part:

> On timely motion, the court must permit an applicant to intervene:
> . . .
> (2) when the applicant claims an interest relating to the property or
> transaction which is the subject of the action and the applicant is so
> situated that the disposition of the action may as a practical matter
> impair or impede the applicant's ability to protect that interest,

unless the applicant's interest is adequately represented by existing parties.

An applicant who seeks to intervene as of right in a pending lawsuit must show that (1) the application is timely; (2) the applicant has a significant protected interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016); *United States v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002); *Wetlands Action Network v. United States Army Corps of Eng'rs*, 222 F.3d 1105, 1113-14 (9th Cir. 2000); *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995).

The Ninth Circuit Court of Appeals has noted the tradition of liberal construction of Rule 24 in favor of applicants for intervention. *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); see also *United States v. Oregon,* 839 F.2d 635, 637 (9th Cir. 1988). Requirements for intervention are broadly interpreted in favor of intervention. *W. Watersheds Project v. Haaland,* 22 F.4th 828, 835 (9th Cir. 2022); see also *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. *City*

*of Los Angeles*, 288 F.3d at 398 (quoting *Forest Conservation Council*, 66 F.3d at 1496).

Montana meets the four-part analysis for intervention as a matter of right because the motion is timely; it has significant protected interests that will be impaired if relief is granted to Plaintiffs; and the Service cannot adequately represent Montana's sovereign interests.

## A.   Montana's motion to intervene is timely.

In determining whether a motion to intervene is timely, a court considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project*, 22 F.4th 828, 836 (9th Cir. 2022). The mere lapse of time, in and of itself, is not sufficient for a court to determine that a motion to intervene is not timely. *Orange County v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).

Here, Montana satisfies the three timeliness factors for intervention as a matter of right in this action. Because of the early stage of this proceeding, there is no delay caused by Montana's intervention. This case was filed on June 18,

2024. While the Service has filed an answer, as have the Defendant-Intervenors, and a joint case management plan was entered, this Court has not made any rulings on the merits of the case. Further, Montana does not seek to alter the joint case management plan and will adhere to it just as the Plaintiffs, Service, and Defendant-Intervenors are required to. As a result, none of the parties will suffer prejudice by permitting Montana to intervene at this stage of the proceedings to protect its substantial state interests.

### B.   Montana has significant protected interests in this action.

A court uses the second and third parts of intervention as a matter of right analysis to establish and define the interest needed to intervene. The intervenor must demonstrate (a) a significantly protected interest that (b) may be impaired by the proceedings before the court. *Forest Conservation Council*, 66 F.3d at 1493. In the court's analysis, the two criteria are wedded to each other, demonstrating the likelihood of harm resulting from the action establishing an interest. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). When the "relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protected interest, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2); he has a significantly protected interest that relates to the property or transaction that is subject of the action." *Forest Conservation Council*, 66 F.3d at 1494.

Whether an applicant for intervention as a matter of right can demonstrate a sufficient interest in an action is a practical and threshold inquiry; therefore, the applicant is not required to establish a specific equitable or legal interest in the action. See *Greene v. Untied States*, 996 F.2d 973, 976 (9th Cir. 1993), aff'd, 64 F.3d 1266 (9th Cir. 1995). The interest must be related to the litigation in which it seeks to intervene.

Congress acknowledged in § 6 of the ESA, 16 U.S.C. § 1535, that all states have a unique concern for the preservation and enhancement of fish, wildlife, and plants. In fact, § 6 of the ESA, directs the Secretary of Interior to cooperate with the states "to the maximum extent practicable." Moreover, the United States Supreme Court has recognized a state's interest in managing and preserving wildlife for the benefit of its citizens. See *Baldwin v. Fish and Game Commn.*, 436 U.S. 371, 377, 385 (1978). Here, Montana has significant protected interests in conserving wildlife species within its borders and managing the land in which it owns a property interest. See §§ 87-1-201 and 87-1-301, MCA.

With respect to the gray wolf, Montana's successful management of the species has resulted in a wolf population that has grown over the past decade to over 1,000 wolves. While Montana's science has changed since delisting, Montana continues to use the best available science to estimate the local wolf

population. As of 2023, iPOM estimated 1,096 wolves and 181 packs in

Montana. The Service's not-warranted finding considered Montana's iPOM, and

the Service determined that:

> According to our analysis of the best available scientific and
> commercial data, now and into the foreseeable future, wolves in the
> Western United States are projected to withstand environmental
> and demographic stochasticity, increased human-caused mortality,
> potential disease events, and changing environmental
> conditions....Specifically, now and into the foreseeable future,
> wolves are likely to retain a healthy level of abundance.

89 Fed. Reg. 8391, 8394-95 (Feb. 7, 2024).

Montana has also maintained adequate regulatory mechanisms since the

gray wolf was originally delisted. These regulatory mechanisms ensure

Montana's wolf population remains viable and connected, but they also act as a

measure to ensure gray wolves in Montana remain on the landscape for

generations to come. The Service's not-warranted finding considered

Montana's, among others, regulatory mechanisms and determined that:

> Given the natural resiliency of wolf populations (*e.g.*, high
> fecundity, dispersal abilities), the conservation efforts and
> regulatory mechanisms in place reinforce that States within the
> Western U.S. metapopulation will continue to manage human-
> caused mortality such that this stressor does not compromise the
> current or future viability of the metapopulation.

*Id.*

Despite the Service's above findings, the Plaintiffs now request that this

Court declare the Service's February 7, 2024, decision "unlawful," that this

Court "[v]acate the Service's 'not warranted' finding," and that this Court

"[r]emand the matter to the Service for further analysis and a new determination

of whether the best available scientific information and data indicates that list

the gray wolf in the Western U.S. is warranted." Doc. 1, at 53. Such relief could

have drastic impacts on Montana's significant protected interests in continuing

to manage wolves and their habitat.

### C.    Montana's interests will be impaired if the gray wolf is listed under the ESA.

To satisfy the requirement of the disposition of the action, which may, as

a practical matter, impair the intervener's ability to protect its interests, the

intervener needs only show a relationship between its legally protected interest

and the Plaintiff's claims. *City of Los Angeles*, 288 F.3d at 401.

Montana's stake in wolf management and conservation spans decades and

includes work on biological recovery and continual monitoring, as well as

understanding and cultivating social acceptance of wolves in Montana. As noted

above, Montana has consistently applied the best available science and

implemented adequate regulatory mechanisms to ensure gray wolves persist in

Montana for generations to come. Despite Montana's effort, it remains clear that

the overall intent of this case stems from the Plaintiffs' desire to reinstate wolves as an endangered species. Plaintiffs' complaint – if successful – could ultimately result in the gray wolf being listed under the ESA. Such a result would strip Montana of its ability to continue managing the species, and, as a result, management would be dictated by the provisions of the ESA and its implementing regulations carried out primarily by the Service, largely to the exclusion of Montana or Montana law.

Disposition of this case in favor of Plaintiffs may also damage the state's credibility. The Constitution of the State of Montana is extraordinarily forward-thinking. Specifically, it contains provisions for a right to a clean and healthful environment, the right to participate, and the right to know. Mont. Const. Art. II §§ 3, 8, and 9. Because of these constitutional requirements, Montana's citizens are actively involved with aspects and decisions that relate to the management of gray wolves. Through their active involvement in wolf management decisions, Montana learned that the biological recovery of the species was not enough. Instead, Montana learned that a requisite understanding and support for wolves on the ground was needed. Specifically, Montana learned that all constituents (outdoor recreationists, hunters/trappers, and wildlife enthusiasts) needed to be heard and that Montana needed to cultivate public tolerance of wolves to ensure a stable and interconnected population of gray wolves.

Lastly, Montana is best situated to manage and conserve wolves within its borders for future generations because Montana has the personnel and resources to manage and conserve gray wolves, and Montana has fostered relationships for over a decade. Montana understands that gray wolf management is resource intensive, and Montana has continued to devote the time and resources to manage the species best. Because of this, Montana understands its gray wolves better than the Service and is in the best position to provide maximum benefits to the species. Moreover, Montana has spent over a decade cultivating public acceptance of wolves. It has devoted significant staff time and resources to respond, minimize, and resolve gray wolf conflicts. Thus, it is vital that Montana retain the management authority over gray wolves.

Accordingly, the disposition of this case in favor of the Plaintiffs would impede Montana's goal to retain state management of gray wolves, substantially alter Montana's approach to responding, minimizing, and resolving conflicts, and jeopardize the public's faith in Montana's ability to move forward with managing and conserving gray wolves in a way that carefully balances human tolerance with the ecological needs of the species.

### D.   The existing parties are not able to adequately represent Montana's interests.

The Ninth Circuit Court of Appeals has stated that:

> [t]he prospective intervenor bears the burden of demonstrating that
> the existing parties may not adequately represent its interest.
> However, the burden of showing inadequacy is 'minimal,' and the
> applicant need only show that representation of its interests by
> existing parties 'may be' inadequate.

*Berg*, 268 F.3d at 822-23. In determining adequacy of representation, the court

considers whether the interest of a present party is such that it will undoubtedly

make all the intervenor's arguments; whether the present party is capable and

willing to make such arguments; and whether the intervenor would offer any

necessary element to the proceedings that other parties would neglect. *City of*

*Los Angeles,* 288 F.3d at 298; *Forest Conservation Council,* 66 F.3d at 1498-99.

Because of the separate sovereign interests possessed by individual states,

it is "on its face impossible" that the Federal Defendants will adequately

represent the interests of Montana. See *Utahns for Better Transportation v.*

*United States Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002). The Ninth

Circuit Court of Appeals observed:

> [i]t would be especially unbecoming for the federal courts to pass
> on a great question in which a sovereign state of the Union has a
> direct interest, if not as lord paramount, at least as representing all
> its citizens, without affording it an opportunity to be heard before
> the legal proceedings in which the question is involved are
> concluded.

*People of the State of Cal. v. United States*, 180 F.2d 596, 600 (9th Cir. 1950).

While the Service and Montana may agree that the gray wolf should not be listed under the ESA, both the Service and Montana are not necessarily similarly situated with respect to this matter. At the heart of this difference is the competing sovereign interests of the Service – as an executive branch agency of the federal government – in carrying out its statutory duties as set forth in the ESA versus Montana's interests in carrying out its sovereign duties to its citizens, and duly enacted laws for management of wildlife within its borders. See §§ 87-1-201 and 87-1-301, MCA. The outcome of this case has the potential to determine whether federal law or state law will guide gray wolf management in Montana.

The U.S. District Court for the District of Idaho, in granting the State of Idaho's motion to intervene under Fed. R. Civ. P. 24(a), further elaborated on the differing postures of the Federal Defendants and an intervening state's interests:

> On one level, the applicants and the USFWS share an objective: Both seek to affirm the 'precluded' portion of the USFWS's decision. But they diverge on their 'ultimate objective,' which is the test the Court must apply. The ultimate objective of the applicants is to prevent, or at least delay as long as possible, the effects of listing; the USFWS simply seeks confirmation of its administrative process. Because they do not share the same ultimate objective, no presumption arises of adequate representation. The applicants need only make a 'minimal' showing, as discussed above, that the representation of their interests by the USFWS 'may be' inadequate.

*Western Watersheds Project v. U.S. Fish and Wildlife Serv.*, 2011 U.S. Dist. LEXIS 74485 at 10-11 (D. Idaho 2011). Likewise, in the present matter, the Service largely seeks "confirmation" of its administrative process, resulting in the decision not to list the Western United States gray wolf DPS as an endangered species or threatened species.

While both Montana and the Service may largely agree on the conservation status of gray wolves, other fundamental differences between both agencies ensure that their differing perspectives are introduced in this matter. Montana will offer necessary elements that neither the Service nor Defendant-Intervenors will offer.

Montana's motion to intervene is timely, it has significant protected interests in the outcome of this matter that may be impaired, and no other party is able to adequately represent Montana's interests in the matter. Accordingly, Montana meets the requirements for intervention as of right under Fed. R. Civ. P. 24(a).

## II.   ALTERNATIVELY, MONTANA SHOULD BE PERMITTED TO INTERVENE UNDER FED. R. CIV. P. 24(B).

In the event this Court does not grant intervention as of right, Montana should be permitted to intervene in this matter pursuant to Fed. R. Civ. P. 24(b)(1)(B), which provides in part:

On timely motion, the court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention under Rule 24(b) requires: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blumm v. Merrill Lynch*, 712 F.3d 1349, 1353 (9th Cir. 2013) (citing *Beckman Indus. v. Intl. Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

### A.    A federal question creates jurisdiction.

Montana meets the requirements for permissive intervention. The first requirement, independent jurisdiction, is satisfied in this instance. Federal questions jurisdiction exists because this case involves a federal administrative action reviewing federal law under the ESA. See 28 U.S.C. § 1331.

### B.    Montana's motion to intervene is timely.

As set forth above, Montana's motion is timely and will not delay these proceedings. This Court has not made any substantive rulings in this matter, and the parties will not be prejudiced by Montana's intervention. Montana has tendered its proposed answer with this motion and brief in support and is prepared to participate in this litigation on the same schedule as the Service and Defendant-Intervenors.

### C.    Montana will address similar issues of law and fact.

The defense(s) Montana will address are similar issues of law and fact that the Service will raise. Namely, the decision foregoing listing of the gray wolf Western United States DPS as an endangered species or threatened species is supported by substantial evidence, the best available science, is not arbitrary and capricious and is otherwise in accordance with the law.

The criteria for permissive intervention are met in this instance, and Montana requests this Court to grant intervention for Montana to represent its interests in this action.

## **CONCLUSION**

For the foregoing reasons, Montana respectfully requests that this Court grant its motion to intervene.

RESPECTFULLY SUBMITTED this 24th day of September, 2024.

By: */s/ Alexander R. Scolavino III*
**Alexander R. Scolavino III**
Agency Legal Counsel

**Jeffrey M. Hindoien**
Chief Legal Counsel

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Rules 7.1 and 24.1 of the Rules of Procedure of

the United States District Court for the District of Montana, I certify the

following concerning the Brief in Support of Unopposed Motion to Intervene by

the State of Montana and Montana Fish, Wildlife and Parks:

1. The document is double spaced except for footnotes, quoted, and indented material;

2. The document is proportionally spaced using Times New Roman 14-point font; and

3. The document contains 3,835 words as calculated by Microsoft Word.

By: */s/ Alexander R. Scolavino III*
**Alexander R. Scolavino III**
Agency Legal Counsel

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, of Montana Fish, Wildlife and Parks, Attorneys for Proposed Intervenor, hereby certify that on September 25, 2024, a copy of the foregoing document was served via email delivery on the following persons:

1.  Kristine Marie Akland
    AKLAND LAW FIRM, PLLC
    317 E. Spruce St. *P.O. Box 7274
    Missoula, MT 59807
    kakland@biologicaldiversity.org

2.  Collette L. Adkins
    CENTER FOR BIOLOGICAL DIVERSITY – CIRCLE PINES
    P.O. Box 595
    Circle Pines, MN 55014-0595
    cadkins@biologicaldiversity.org

3.  Margaret Ellen Robinson
    HUMANE SOCITY OF THE UNITED STATES
    1255 23rd St. NW, Suite 450
    Washington, DC 20037
    mrobinson@humanesociety.org

    *Attorneys for Plaintiffs Center for Biological Diversity, Humane Society of the United States, Humane Society Legislative Fund, Sierra Club*

4.  Kelly E. Nokes
    WESTERN EVIRONMENTAL LAW CENTER – COLORADO
    P.O. Box 218
    Buena Vista, CO 81211
    nokes@westernlaw.org

5.  Matthew K. Bishop
    WESTERN ENVIRONMENTAL LAW CENTER
    103 Reeder's Alley
    Helena, MTG 59601
    bishop@westernlaw.org

    *Attorneys for Consolidated Plaintiffs Western Watershed Project, International Wildlife Coexistence Network, WildEarth Guardians, Nimiipuu Protecting the Earth, Alliance for the Wild Rockies, Friends of the Clearwater, Wilderness Watch, Predator Defense, Trap Free Montana, Protect the Wolves*

6.      Astrid Stuth Cevallos
        Environment & Natural Resources Division
        Wildlife & Marine Resources Section
        U.S.S DEPARTMENT OF JUSTICE
        150 M St. NE
        Washington, DC 20002
        astrid.cevallos@usdoj.gov

        *Attorneys for Defendants Martha Williams, in her official capacity as Director of
        the U.S. Fish and Wildlife Services; Beb Haaland, in her official capacity as
        Secretary of the Interior; and United States Department of the Interior*

7.      Hannah Stone, Esq.
        Alyssa L. Campbell, Esq.
        MILODRAGOVICH, DALE & STEINBRENNER, P.C.
        600 High Park Way *P.O. Box 4947
        hstone@bigskylawyers.com
        acampbell@bigskylawyers.com

        *Attorneys for Defendant-Intervenor Sportsman's Alliance Foundation, Safari Club
        International, and Rocky Mountain Elk Foundation*

8.      Michael T. Jean
        SPORTSMEN'S ALLIANCE FOUNDATION
        801 Kingsmill Parkway
        Columbus, OH 73299
        mjean@sportsmansalliance.org

        *Attorney for Defendant-Intervenor Sportsman's Alliance Foundation*

9.      Regina Lennox
        SAFARI CLUB INTERNATIONAL
        501 2nd Street NE
        Washington, DC 20002
        rlennox@safariclub.org

        *Attorney for Defendant-Intervenor Safari Club International*

//

//

10.     James H. Lister
        BIRCH HORTON BITTNER & CHEROT
        1100 Connecticut Ave. NW, Suite 825
        Washington, DC 20036
        jlister@dc.bhb.com

        *Attorney for Defendant-Intervenor Rocky Mountain Elk Foundation*

                                    By: /s/ *Alexander R. Scolavino III*
                                        **Alexander R. Scolavino III**
                                        Agency Legal Counsel